UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Jack Z. Higgins

   v.                                          Civil No. 10-cv-436-SM

Larry Blaisdell, Warden,
Northern New Hampshire
Correctional Facility[1]


**REPORT AND RECOMMENDATION**

    Before the court is Jack Higgin's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, challenging his 2000 conviction and sentence, a 2001 denial of parole, and a New Hampshire Supreme Court 2010 order declining Higgins's notice of appeal.[2] The matter is before the court for preliminary review to determine whether the petition is facially valid and may proceed. See Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") (requiring court to dismiss habeas petition where

---

[1] Larry Blaisdell is no longer the Warden of the Northern New Hampshire Correctional Facility. To the court's knowledge, that position is currently vacant.

[2] Higgins initially filed his petition on September 28, 2010. Although the case was referred to the magistrate judge at that time, the magistrate judge did not receive actual notice of the referral until December 2011. The court regrets the clerical error that delayed the court's review of this petition.

petition facially demonstrates that there is no entitlement to relief); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2) (requiring magistrate judge to preliminarily review prisoner actions to determine whether plaintiff or petitioner has stated any claim upon which relief might be granted).

**Standard of Review**

Under LR 4.3(d)(2) and § 2254 Rule 4, when an incarcerated petitioner commences a habeas action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court finds that the petition fails to state any claim upon which relief might be granted.  See LR 4.3(d)(2); § 2254 Rule 4.

In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).  The court applies a standard

analogous to that used in reviewing a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

    To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact."  Id. (citations, internal quotation marks and alterations omitted).  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  See id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.

**Background and Procedural History**

1. State Court Trial and Direct Appeal

On June 28, 1998, Higgins was arrested and charged with aggravated felonious sexual assault, criminal restraint, and two counts of criminal threatening. Higgins was convicted of those charges after a jury trial. On March 22, 2000, the state trial court sentenced Higgins to 3 ½ – 7 years in prison on the criminal restraint charge, and three enhanced sentences of 10 – 20 years each on the remaining charges, to run consecutively to the criminal restraint sentence and to one another. Altogether, Higgins was sentenced to 33 ½ – 67 years in prison. Higgins was given credit on the sentence for the time he spent incarcerated

pretrial, which was almost one year and nine months.  The trial court recommended to the Department of Corrections that Higgins participate in a sexual offender program during his incarceration.

Higgins filed a direct appeal of his conviction and sentence.  Higgins also filed a motion in the trial court seeking to vacate his sentences on the criminal threatening charges on the grounds of ineffective assistance of counsel and a violation of due process in the imposition of enhanced sentences.  The trial court denied the motion.  Higgins appealed the denial.  That appeal was joined with Higgins's pending direct appeal.  In addition to the brief filed by his attorney, Higgins filed a pro se brief in the New Hampshire Supreme Court ("NHSC") "challeng[ing] the consecutive nature of his sentences on numerous grounds."  State v. Higgins, 149 N.H. 290, 303, 821 A.2d 964, 975 (2003).

2.  Parole

On April 7, 2003, the NHSC affirmed Higgins's conviction and sentences.  See id. at 292, 967.  The NHSC denied Higgins's motion to reconsider on May 15, 2003.

Higgins served his criminal restraint sentence first, and was thus first eligible for parole on December 27, 2001. Prior to that date, on November 8, 2000, prison officials interviewed Higgins to assess his eligibility for sex offender programming at the prison. Higgins declined to discuss his case and denied committing the offenses of which he was convicted. Higgins was deemed ineligible for any sex offender programming, but was told that he could submit a new request for such programming if he was willing to discuss and take responsibility for his offense in the future.

The New Hampshire Adult Parole Board ("APB") denied Higgins parole on October 25, 2001, because he had failed to complete the sex offender program. Higgins therefore served the maximum term of that sentence, which expired in June 2005. Higgins is presently serving the seventh year of his first 10 – 20 year sentence. Higgins' next minimum parole eligibility date is in June 2015.

Higgins has submitted, as an exhibit to his petition, written communications between himself and various prison officials showing that on February 4, 2007, Higgins took full responsibility for his criminal offenses and sought to be assessed for sex offender programming eligibility. Higgins was

6

told that he would be placed on the assessment waiting list, but that due to the length of time until his next minimum parole eligibility date, he would likely not be assessed until 2013.

On April 30, 2009, Higgins inquired as to the prison's regulations concerning inmates serving long sentences who wanted to get into the sexual offender program.  In response, a prison official informed Higgins, "we will not see you until your last sentence."

3.   State Court Post-Conviction Litigation

In January 2009, Higgins filed a petition for a writ of habeas corpus in the New Hampshire Superior Court challenging his convictions and sentences.  In that petition, Higgins alleged that: (1) the consecutive sentences on the criminal threatening charges violated Higgins's state and federal double jeopardy rights, in that they constituted multiple punishment for duplicative convictions; (2) the denial of parole based on Higgins's failure to complete the sex offender program violated Higgins's rights under New Hampshire law because he had been unfairly denied access to the sex offender program; and (3) Higgins's Fourteenth Amendment equal protection rights were violated because some inmates similarly situated to Higgins have

been paroled to consecutive sentences without assessment for or entry into the sex offender program, and some inmates similarly situated to Higgins have been allowed to participate in the sex offender program prior to their last sentence.  Finding no violation of Higgins's rights, the Superior Court denied the petition.  See Higgins v. Blaisdell, No. 214-2009-EQ-124 (N.H. Super. Ct., Coös Cnty., Mar. 8, 2010) (order denying petition).

Higgins appealed the denial of his state habeas petition to the NHSC.  That court declined to accept the appeal pursuant to N.H. Sup. Ct. Rule 7(1)(B).  See Higgins v. Warden, No. 2010-0185 (N.H. Apr. 29. 2010) (order declining to accept appeal).

### The Claims[3]

Higgins now files the instant petition, raising the following claims for relief:

1. Higgins's convictions were secured in violation of his Fifth, Sixth, and Fourteenth Amendment rights, in that: (a) the prosecution failed to disclose exculpatory evidence; (b) the prosecution misrepresented the nature of the criminal

---

[3]The claims, as identified herein, will be considered to be the claims raised in the petition for all purposes.  If Higgins disagrees with the claims as identified, he must do so by properly filing an objection to this report and recommendation or a motion to amend the petition.

threatening charges to the court, resulting in Higgins's subjection to double jeopardy; (c) the trial court denied Higgins's request to inquire into certain aspects of the victim's history at trial, which deprived Higgins of the right to: (i) confront the witnesses against him; and (ii) the effective assistance of counsel; and (d) the trial court allowed Higgins's involuntary confession to be admitted at trial.

2. Higgins's consecutive criminal threatening sentences violated Higgins's Fifth and Fourteenth Amendment right not to be subjected to double jeopardy by being twice punished for the same offense;

3. Higgins's due process rights were violated when he was unfairly denied access to the prison's sex offender program, resulting in the Parole Board's arbitrary and capricious denial of Higgins's parole;

4. Higgins's equal protection rights were violated when he was denied parole due to his failure to complete the sex offender program, where he will not be able to complete the sex offender program until he is serving his last sentence, while other inmates have been granted parole to a consecutive sentence without having completed the sex offender program, or have been

allowed to complete the sex offender program before beginning to serve their last sentence.

    5.    The New Hampshire Supreme Court violated Higgins's Fourteenth Amendment due process rights by failing to articulate the reasons Higgins's 2010 appeal was declined.

## Discussion

I.    <u>Claims Concerning Trial and Sentencing (Claims 1 and 2)</u>

    Higgins has asserted claims challenging events that occurred during or before Higgins's criminal trial and sentencing. Higgins has also alleged that in imposing his two criminal threatening sentences consecutively, the sentencing court violated his double jeopardy rights.

    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year limitations period for state prisoners to file federal habeas petitions. <u>See</u> 28 U.S.C. § 2244(d)(1); <u>see</u> <u>Gonzalez v. Thaler</u>, No. 10-895, \_\_\_ U.S. \_\_\_, \_\_\_, 2012 WL 43513, *9 (Jan. 10, 2012); <u>Wood v. Spencer</u>, 487 F.3d 1, 4 (1st Cir. 2007). AEDPA's one-year time limit runs from the time that the state court judgment of conviction became final by the conclusion of direct review or by the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A); <u>see</u> <u>Gonzalez</u>,

2012 WL 43513 at *9. Where a state prisoner obtains a ruling from the highest state appellate court but opts not to file a petition for certiorari in the United States Supreme Court, the state court judgment becomes final upon the expiration of the time for seeking such certiorari review. See Gonzalez, 2012 WL 43513 at *9. Appellants seeking certiorari review in the United States Supreme Court must file their petition in that court "within ninety days after the entry" of the judgment they seek to appeal. See 28 U.S.C. § 2101(c).

Certain statutory exceptions to the statute of limitations exist where the untimely filing was caused by state-impeded relief, new constitutional rights created by the Supreme Court, or newly discovered facts underpinning the claim. See 28 U.S.C. § 2244(d)(1)(B)-(D); Gonzalez, 2012 WL 43513 at *9 n.9; Wood, 487 F.3d at 4; David v. Hall, 318 F.3d 343, 344 (1st Cir. 2003). Further, AEDPA excludes from the one-year limitations period the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

While the limitations period is stopped during the pendency of properly filed post-conviction state court litigation, it is

not reset or restarted by post-conviction litigation initiated after the AEDPA limitations period has expired. See Cordle v. Guarino, 428 F.3d 46, 48 n.4 (1st Cir. 2005) (post-conviction state court litigation filed after AEDPA's limitations expire does not stop or reset clock).

    Higgins's conviction became final, at the latest, on May 15, 2003, the date upon which the New Hampshire Supreme Court denied Higgins's motion to reconsider its decision affirming his conviction.  Higgins did not file a petition for a writ of certiorari in the United States Supreme Court.  Accordingly, the one-year period during which Higgins could have timely filed a federal habeas petition expired when the ninety-day period during which he could have petitioned the United States Supreme Court for certiorari expired, which was August 13, 2003. Higgins concedes that he did not initiate any state court proceeding challenging his conviction or sentence until January 2009, more than four and a half years after the expiration of the limitations period.  As stated above, those proceedings do not restart the expired limitations period.  The record includes no facts to indicate that any statutory exception to the time limit is present in this case.  Accordingly, the court finds that Higgins's claims challenging decisions made at the time of

12

his trial and sentencing (claims numbered 1 and 2 above), are barred by the statute of limitations and should be dismissed.

II.  Denial of Parole (Claims 3 and 4)

    A.  Due Process

Higgins asserts that he was denied due process when the APB denied him parole arbitrarily and capriciously, because he had not completed the sex offender program.  Higgins states that he has been denied admission to the sex offender program and will not be allowed to attend the sex offender program until his last sentence.  Accordingly, Higgins claims that he will not be granted parole in any of his first three sentences, and will have to serve the maximum terms of those sentences before he can complete sex offender programming and thereafter be considered for parole.  As Higgins has not alleged any independent right to receive sex offender programming, his claim boils down to a challenge to the denial of his parole, in 2001 and in the future, based on his failure to complete the sex offender program.  Higgins asserts that this violates his due process rights, as he claims to have a liberty interest in obtaining parole created by the state parole statutes and regulations.

Procedural due process requirements apply only to the deprivation of interests in liberty and property. See Cahoon v. Shelton, 647 F.3d 18, 28 (1st Cir. 2011) (quoting Mathews v. Eldridge, 424 U.S. 319, 332 (1976)). A convicted person has no constitutional right to or liberty interest in conditional release from incarceration, on parole or otherwise, "'before the expiration of [his] valid sentence.'" See González-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010), cert. denied, ___ U.S. ___, ___, 131 S. Ct. 1568, 1568 (2011) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). A right to parole under the Fourteenth Amendment Due Process Clause exists only if state law creates that right. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Hamm v. Latessa, 72 F.3d 947, 954-55 (1st Cir. 1995); Booker v. Warden, No. 98-466-JD, 1999 WL 813893, at *2 (D.N.H. June 22, 1999).

Both the New Hampshire parole statute and the administrative regulations governing the APB's conduct plainly provide that the APB has discretion in deciding whether to grant or deny parole to an eligible inmate. See N.H. Rev. Stat. Ann. 651-A:6 (2011) (providing that the APB "may" grant parole to eligible inmates); N.H. Code Admin. R. Ann. Par-301.02 (providing that "[p]arole shall be considered a privilege"). The New Hampshire

Supreme Court has repeatedly held that the APB has broad discretion in its parole decisions, and that the APB is not mandated to grant parole to an inmate, even where he meets certain conditions or criteria.  See Knowles v. Warden, 140 N.H. 387, 389, 666 A.2d 972, 974-75 (1995); Cable v. Warden, State Prison, 140 N.H. 395, 398, 666 A.2d 967, 969 (1995).

Because New Hampshire provides an opportunity for parole to its prisoners as a privilege, not a right, it has not created a liberty interest in the opportunity for parole.  See Reid v. Stanley, Civ. No. 04-cv-369-JD, 2006 WL 1875355, at *4 (D.N.H. July 6, 2005).  Accordingly, the denial of parole does not implicate a New Hampshire inmate's due process rights. Higgins's claim based on alleged due process violations arising out of the denial of parole (claim number 3 above) should therefore be dismissed from this petition.

    B.    Equal Protection

Higgins claims that he was denied equal protection of the law, in violation of the Fourteenth Amendment, when the APB required him to complete the SOP as a condition of obtaining parole, but allowed other inmates to be paroled to consecutive sentences without having completed the SOP, and allowed other

inmates to attend the SOP before they were serving their last sentence.

Because, as previously discussed, there is no right to release on parole, no fundamental right is implicated when parole is denied. See Perry v. Pa. Dep't of Corrs., No. 11-2472, 2011 WL 3510735, *3 (3d Cir. 2011) (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008) (observing, in dicta, that state action involving "discretionary decisionmaking based on a vast array of subjective, individualized assessments" does not violate Equal Protection "when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted"). Accordingly, to trigger the protections of the Equal Protection Clause, an inmate must demonstrate that the differential treatment he received in being denied parole lacked any rational relationship to a valid penological objective. See Williams v. Hobbs, ___ F.3d ___, ___, 2011 WL 6004086, *2 (8th Cir. 2011). Accordingly, if a rational basis existed for the APB to deny Higgins parole, such as his failure to complete the SOP, no equal protection violation has occurred, as the denial is within the APB's discretion. The APB regulations state that the APB "shall deny" parole to an inmate where the Board finds

16

that "[c]ontinued treatment, mental or psychological care, or vocational or other training within the institution would substantially improve the inmate's capacity to lead a law-abiding life upon release at a future date." N.H. Code Admin. R. Par-302.01(b). The court finds that requiring an inmate who has been convicted of a sex offense to complete a sex offender program before being released from incarceration is a rational basis for denying Higgins parole. Higgins cannot therefore state an equal protection claim for relief, and that claim (claim number 4 above) should be dismissed.

III. Declination of Appeal

Higgins's 2010 appeal of his state habeas action was declined by the NHSC under NHSC Rule 7(1). Higgins claims that the NHSC violated his due process rights by declining his appeal without articulating reasons for the denial.

> The supreme court may, in its discretion, decline to accept an appeal, other than a mandatory appeal, or any question raised therein, from a trial court after a decision on the merits, or may summarily dispose of such an appeal, or any question raised therein, as provided in Rule 25. . . .

N.H. Sup. Ct. R. 7(1) (emphasis added). NHSC Rule 25, referenced within Rule 7(1), provides that the NHSC may summarily affirm a case, or any question therein, and

directs that, under those circumstances, the court should include in its order "a succinct statement of the reason for affirmance." The rule further states:

> An order of summary dismissal under this rule may be entered when the supreme court has not considered the merits, because the court clearly lacks jurisdiction, or other just cause for summary dismissal exists, in which case the order shall contain a succinct statement of the reason for dismissal.

N.H. Sup. Ct. R. 25. A "declination of acceptance order" issued by the court means that "[t]he supreme court does not deem it desirable to review the issues in a case, as a matter of sound judicial discretion and with no implication whatever regarding its views on the merits." N.H. Sup. Ct. R. 3 (emphasis added).

Accordingly, an order declining to accept an appeal issued by the NHSC pursuant to Rule 7(1), as was issued in the instant case, is not a decision on the merits of the case. See Albin v. Concord Dist. Ct., No. CIV. 00-12-JD, 2000 WL 1513719, *1 n.4 (D.N.H. Sept. 29, 2000) ("The [NHSC] may accept or decline an appeal, in its discretion, and a declination of the appeal is not a decision on the merits.").

Rule 7(1) indicates that a notice of appeal may be declined pursuant to that rule or may be summarily disposed of pursuant to Rule 25. The court need only articulate its reasoning in the

latter case, where the case was summarily decided. To the extent that the state court rules create any entitlement to or interest in articulated reasons for affirmance, that interest is limited to cases that are disposed of pursuant to Rule 25.

Higgins's notice of appeal was declined pursuant to Rule 7(1), and therefore, the court was not required to articulate its reasoning. Because Higgins cannot assert any liberty interest in articulated reasons for the declination of his appeal, he cannot assert that he was deprived of such an interest in violation of his due process rights. Accordingly, the claim asserting a due process violation in the declination of Higgins's appeal (claim number 5 above) should be dismissed.

## Conclusion

For the foregoing reasons, the court recommends that the petition be dismissed in its entirety, as it fails to assert any claim upon which federal habeas relief might be granted. See § 2254 Rule 4. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d

52, 57 (1st Cir. 2011), cert. denied, ___ U.S. ___, No. 11-7382, 2012 WL 33578, *1 (Jan. 9, 2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

February 1, 2012

cc: Jack Z. Higgins, pro se